[Decided February 27, 1893.]

## L. W. NELSON *v.* S. W. BLAISDELL ET AL.

[S. C. 32 Pac. Rep. 391.]

ATTORNEY'S FEES.— Where an attorney has recovered a judgment against a corporation for services in several very important and sharply contested cases, and the amount is shown by attorneys of high standing and long experience to be reasonable, and there was no agreement as to the amount of fees, the judgment will not be disturbed in this court.

Baker County: JAMES A. FEE, Judge.

Suit by L. W. Nelson against S. W. Blaisdell, J. W. Bailey, I. L. Given, B. F. Baker, and L. A. Booth, the Nelson Mining Company, Samuel Howe, Montgomery Howe, William Nelle, David McClure, Jr., Alfred Abbey, E. Dubois, George Roeth, and F. V. Drake.    From a decree sustaining a judgment recovered by F. V. Drake against the Nelson Mining Company for professional services as an attorney, Samuel Howe, Montgomery Howe, William Nelle, David McClure, Jr., Alfred Abbey, E. Dubois, and George Roeth, stockholders in the Nelson Mining Company, appeal.    Affirmed.

The other facts fully appear in the following statement by BEAN, J.:

This suit was brought by L. W. Nelson against S. W. Blaisdell, F. V. Drake, the Nelson Mining Company, and certain of its stockholders, to enforce the specific performance of a contract made between Nelson and the defendant corporation in May, 1889.

The facts are that on November 12, 1887, the plaintiff sold to defendant corporation a certain hydraulic placer mine, in Baker County, known as the Nelson Mine, for the sum of three hundred thousand dollars, of which thirty-five thousand dollars were paid in cash, fifty thousand dollars secured by mortgage on certain property belonging to the corporation, known as the Auburn Ditch Property, and, of the remainder of the purchase price, one hundred and fifteen thousand dollars were to be paid November 12, 1888, and one hundred thousand thousand dollars on November 12, 1889. By the terms of the contract of sale the deeds for the property were to be held in escrow by the Merchants' National Bank of Portland until the entire purchase price should be paid, and then delivered to the defendant corporation. This sale was made through the agency of defendant Blaisdell, who had previously obtained an option on the mine, and who was one of the promoters and organizers of the Nelson Mining Company, which was organized and incorporated for the purpose of buying this mining property. Under his agreement with Nelson, Blaisdell was to receive as a compensation for making the sale twenty-five per cent of the purchase price when the same should be paid, but this agreement was unknown to his associates in the Nelson Mining Company, who understood and believed, and Blaisdell so represented to them, that the mine could not be purchased for less than three hundred thousand dollars, and that he was to receive from Nelson no commission on the sale. Immediately after the purchase of the mine by the Nelson Mining Company, it entered into possession thereof, and commenced

to operate it with Blaisdell as superintendent, but soon became involved in litigation with the farmers owning land along the sources of water supply for the mine, concerning water rights, when, for the purpose of placing all the title to the property in the defendant corporation, the better to enable it to conduct such litigation, by mutual agreement the deeds held in escrow by the Merchants' National Bank were delivered, and the balance of the purchase price secured by a mortgage to Nelson on the property. About this time Nelson endorsed and delivered to Blaisdell the fifty thousand dollar note and mortgage on the Auburn Ditch Property, to be held by him until November 12, 1888 (the date when the payment of one hundred and fifteen thousand dollars would be due Nelson from the company), as security to that amount for his commissions in case the purchase price should be paid in accordance with the terms of the contract, and with the understanding that, if the payments were not so made, the note and mortgage should be returned to Nelson. The company entirely failed and neglected to make the payments as agreed, and in May, 1889, Nelson, at the urgent request of Blaisdell, went to Oakland, California, the home office of the company, and effected a compromise and settlement with it, which is known in this case as the "May Agreement," and which is, in effect, an agreement for the rescission of the contract of sale by Nelson to the company. By this agreement Nelson was to surrender up the notes of the company, and cause its mortgages given to secure their payment to be cancelled, and ultimately to receive back the property, after the company had been reimbursed for certain moneys advanced and expended by it in operating the mine, and paying off certain liens. Although Nelson cancelled of record the mortages held by him, he was unable to comply with the agreement, because Blaisdell refused to surrender up for cancellation the fifty thousand dollar note and mortgage on the Auburn Ditch Property, held as security for his commissions, and in November, 1889, one

Bailey, to whom he had assigned the note without consideration, began a suit in the circuit court for Baker County to foreclose the mortgage, making service upon Blaisdell, as manager of the defendant company, who suffered a default, and a decree of foreclosure was entered in December of the same year. On September 25, 1889, the defendant Drake, who was the attorney for the Nelson Mining Company in the water-right litigation and other legal matters, recovered a judgment by default against the company for eleven thousand nine hundred and sixty-three dollars and thirty cents, being the balance of a fifteen thousand dollar fee charged by him for services as attorney. Executions were issued on the Bailey and Drake judgments, and levied upon the property of the company, whereupon this suit was begun by Nelson to enforce the "May Agreement," or foreclose his mortgages, as the court might, under the facts, decree. In his complaint he alleges that the Bailey decree and Drake judgment are each fraudulent and void, and the result of a collusion between Blaisdell and Drake to obtain title to the mining property, and deprive him of his rights in the premises. The Nelson Mining Company, Blaisdell, Drake and the individual stockholders of the Nelson Mining Company, who are defendants, have each answered separately, the individual stockholders joining with plaintiff in alleging and claiming by their answer that the Bailey decree and Drake judgment are both the result of fraud and collusion between Blaisdell and Drake, and an attempt to obtain title to the mine and defraud them out of their interest in the company property. A decree was rendered in the court below setting aside the Bailey decree, and cancelling the fifty thousand dollar note and mortgage upon which it was based ; enforcing the terms and conditions of the "May Agreement"; holding the Drake judgment valid, but subordinate and subject to the rights of the plaintiff. From so much of the decree as sustains the validity of the Drake judgment,

the individual stockholders of the Nelson Mining Company have appealed.

*Chas. B. Bellinger (Dolph, Mallory & Simon,* and *Snow & McCamant* on the brief), for Appellants.

*John B. Cleland (Wm. A. Cleland,* and *Frank V. Drake* on the brief), for Respondent.

BEAN, J. (after stating the facts).—A motion was filed in this court to dismiss the appeal on the ground that the answer of the individual stockholders containing affirmative allegations against Drake, and the charge contained therein, is not germane to the original suit brought by Nelson to enforce the May contract, and cannot be litigated therein; but as the appealing defendants have failed to sustain the averments of their answer by the evidence, it is unnecessary to consider the motion to dismiss, and we shall put this decision on the merits, assuming that in a suit to foreclose a mortgage, or to enforce the specific performance of a written contract against a corporation, the individual stockholders of the corporation, on being made parties, may litigate in the same suit the validity of a judgment against the corporation.

Defendant Drake, who is an attorney of this court residing in Portland, was, in May, 1888, employed by the then manager of the company, B. F. Baker, with the knowledge and consent of the directors, as attorney for the company in the water litigation, and other matters requiring legal advice, with no agreement as to the amount of his fees. By the terms of his employment he was to subordinate all his other business to that of the company, and hold himself in readiness at all times to attend to the business of the company. These water cases were originally commenced in Baker County, but, on the application of the defendant company, were transferred to the federal court, where a long, protracted, and sharply contested litigation ensued, involving substantially the entire value of the mine, for without the water rights the mine

was practically valueless. That the defendant Drake rendered the services for the company according to agreement is not questioned; but the claim is that the amount charged by him is unreasonable, and largely in excess of the value of the services rendered, and that his judgment was obtained by fraud and collusion with Blaisdell, the manager of the company. A critical examination of the evidence has, in our opinion, failed to disclose any foundation for either of these claims. There is no evidence, so far as we can find, showing, or tending to show, any collusion between Blaisdell and Drake concerning the amount of attorney's fees, or the recovery of his judgment; but, when process in the Drake action was served on Blaisdell, he not only immediately notified the president of the company in California, but consulted an able attorney in Portland, and was advised by him that Drake's charges were reasonable, and that it would be useless to attempt to defend the action. Not only this, but the directors, and several, if not all, of the appealing stockholders, were informed of this action and judgment in November, 1889, yet took no steps to open the default, or defend the action. So far as this record discloses, the corporation never has, at any time, questioned the validity of the judgment, or the reasonableness of the attorney's charges, notwithstanding the appealing stockholders obtained control of the corporation before this case was submitted to the court below, and the company appeared at the hearing by its attorney, who was content to try the case on the answer filed, which neither contests nor denies the validity of the Drake judgment. It is true this answer was prepared by Drake while he was attorney for the company, but after the change in the management, and the substitution of another attorney, no attempt was made to amend the answer, or put in issue the validity of the Drake judgment, but the case was tried, and is now before this court for hearing, on the answer as originally filed. And, besides, from the great preponderance of the testimony, the amount charged by Drake was not

an unreasonable fee for his services.   Judges Williams, Whalley, and Olmsted, United States District Attorney Mays, T. A. Stephens, W. M. Gregory, and others, all reputable attorneys of long standing in this court, agree in testifying that the services rendered by Drake were reasonably worth the amount charged therefor.   Judge Williams says: "Some considerable time ago — a year ago, perhaps — I had a conversation with Colonel Drake about this case, in which he stated quite a number of the facts, and described, to some extent, his services.   Subsequently to that I was engaged in a suit in which Sheppard was a party, and I think Mr. Nelson and the Nelson Mining Company was another party, in which I obtained some insight — not very extensive — into the case, and I have heard the evidence given by Colonel Drake read on this occasion.   My judgment is that it would be somewhere between ten and fifteen thousand dollars; that that would be a reasonable compensation for the services in that case."   Judge Whalley, who was consulted professionally by Blaisdell when the action was commenced, and at that time looked into the merits of Drake's fees, also testified: "I was once spoken to in reference to this matter for the purpose of estimating the value of Mr. Drake's services.   At that time the explanation given to me was not as full as it has been in the question just addressed to me, but I had an opportunity at that time of examining the brief that is referred to in the question. After looking over the whole thing, considering the amount of property involved, I then stated, as I now state, that I think that ten thousand dollars would have been an exceedingly low fee, and I do not think that fifteen thousand dollars, under the circumstances, would be a high one."   Judge Olmsted, who was attorney for the plaintiffs in the water-right litigation, and in two other cases against the company, and is therefore especially qualified to testify on that subject, says: "I was present during most of the time the testimony was being taken in those cases, except about ten days.   I know of

the services rendered by Colonel Drake,—know the character of the cases and the property involved.   An ordinary and reasonable charge for a like service, in my experience of sixteen years' practice in Oregon, would be about twelve thousand dollars.   I wouldn't put it less than that.   I know it took a good deal of time; then there was an extensive lot of records to look up.   There was an endless amount of work."   To the same effect is the testimony of the other witnesses mentioned.

From these considerations we conclude, therefore, that the decree of the court below should be affirmed, and it is so ordered.

***

[Decided February 27, 1893; rehearing denied July 13, 1893.]